**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AURORA MORRISON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>-against-<br><br>SAKS FIFTH AVENUE LLC, SAKS DIRECT, INC., SAKS DIRECT, LLC D/B/A SAKS DIRECT II, LLC, and SAKS INCORPORATED D/B/A SAKS DEPARTMENT STORES,<br><br>        Defendants. | Case No.19-CV-7487 |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

AURORA MORRISON ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this action against Defendants SAKS FIFTH AVENUE LLC, SAKS DIRECT, INC., SAKS DIRECT, LLC D/B/A SAKS DIRECT II, LLC, and SAKS INCORPORATED D/B/A SAKS DEPARTMENT STORES (collectively, "Defendants") to stop Defendants' practice of sending unlawful, unsolicited text messages to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

**INTRODUCTION**

1. Defendants operate "Saks Fifth Avenue," a chain of luxury department stores. In an effort to solicit potential and former customers, Defendants send text messages to consumers who never consented to receive them.

1

2.     Customers who sign up for an account with Defendants submit their personal information, including their phone number. Likewise, Defendants collect consumer phone numbers in conjunction with sweepstakes, gift card sales, product sales, from third-party affiliates, and by other means. On information and belief, Defendants collect these phone numbers in their electronic database and sends text messages to those phone numbers in an automated manner. Defendants know that they do not have consumers' consent to send text messages to these numbers. Defendants wilfully violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") with this widespread campaign of sending unsolicited text messages.

3.     Defendants made one or more unauthorized text messages to the cell phone of Plaintiff using an automatic telephone dialing system ("ATDS") for the purpose of soliciting business from Plaintiff.

4.     Defendants also violate the TCPA by failing to provide message recipients with an automated mechanism to opt out of receiving such messages.

5.     The TCPA was enacted to protect consumers from unsolicited mass marketing exactly like that alleged in this case. In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited ATDS telemarketing activities to consumers and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

6.     By sending the telemarketing and/or advertising text messages at issue in this Complaint, Defendants caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing mass-marketing text messages, as well as the

monies paid to their carriers for the receipt of such messages.

## PARTIES

7.     Plaintiff AURORA MORRISON is a natural person who resides in New York, New York.

8.     Defendant SAKS FIFTH AVENUE LLC is a company that operates a chain of luxury department stores that does business under the registered trade names "Saks Fifth Avenue," "Saks OFF 5TH," and "Saks Fifth Avenue OFF 5TH." Defendant SAKS FIFTH AVENUE LLC maintains its principal office at 225 Liberty Street 31st Flr., New York, NY 10281 and is organized under the laws of the State of Massachusetts. Defendant may be served with process by serving its registered agent, Corporation Service Company 84 State St. 6th Flr., Boston, MA 02109.

9.     Defendants SAKS DIRECT, LLC and SAKS DIRECT, INC. operate Defendants' websites. Those websites include statements regarding the terms of Defendants' text message marketing campaigns. Defendant SAKS DIRECT, INC. maintains its principal office at 12 E. 49th St., New York, New York, 10017 and is organized under the laws of the State of New York. Defendant may be served with process by serving its registered agent, Corporation Service Company 80 State Street, Albany, New York 12207. Defendant SAKS DIRECT, LLC maintains its principal office at 12 E. 49th St., New York, New York, 10017 and is organized under the laws of the State of Delaware. Defendant may be served with process by serving its registered agent, Corporation Service Company 251 Little Falls Dr., Wilmington, DE 19808.

10.    Defendant SAKS INCORPORATED D/B/A SAKS DEPARTMENT STORES is a company that operates Defendants' data centers. Defendant SAKS INCORPORATED maintains its principal office at 225 Liberty Street 31st Flr, New York, NY 10281 and is organized under the laws of the State of Tennessee. Defendant may be served with process by serving its registered

agent, Corporation Service Company 2908 Poston Ave., Nashville, TN 37203.

11. Defendants are wholly owned by Hudson's Bay Company, a publicly traded company on Canada's Toronto Stock Exchange. Hudson's Bay Company does not have any parent corporations.

12. Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

14. The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. Furthermore, Defendant SAKS FIFTH AVENUE LLC's headquarters is located in this District, Defendants have purposefully availed themselves of the protections of New York law, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

15. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendants. Furthermore, the Plaintiff Class consists of at least

one hundred members.

## LEGAL BASIS FOR THE CLAIMS

16.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

17.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems.

18.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA, *inter alia*:

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit certain calls to members of the Do-Not-Call Registry

19.     Furthermore, an entity can be liable under the TCPA for telemarketing text messages, phone calls, and faxes made on its behalf, even if that entity did not directly transmit the telemarketing solicitation.  Under those circumstances, the entity is deemed to have initiated the communications through the person or entity that disseminated the telemarketing message.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

20. Limited exceptions exist in the TCPA for specific scenarios such as emergency calls. None apply to telemarketing/advertising text messages of Defendants.

## COMMON FACTUAL ALLEGATIONS

21. Defendants own and operate the large clothing retailer "Saks Fifth Avenue" and associated brands such as "Saks Off Fifth." In an effort to solicit potential and former customers, Defendants began sending automated text messages *en masse* to phone numbers it acquired from customer registrations, sweepstakes entries, gift card purchases, third-parties, and other means. This mass-telemarketing and/or advertising entailed sending text messages to consumers' cell phones across the country.

22. Unfortunately, in Defendants' overzealous attempt to market its services, it sent (and continues to send) text messages to consumers who never provided consent to send text messages and/or to consumers having no relationship with Defendants. Defendants knowingly sent (and continue to send) these telemarketing and/or advertising text messages without the prior express written consent of the text message recipients. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF AURORA MORRISON

23. Plaintiff signed up for an online account on saks.com in anticipation of purchasing an item from the website. When she did so, Defendants did not ask if she gave permission to receive text messages from Defendants. Plaintiff ultimately decided to purchase that item from another retailer instead. Nevertheless, beginning around July of 2019, Plaintiff began to receive telemarketing/advertising text messages from the number 75283, which is a mass-marketing "short code" associated with Defendants.

24. Plaintiff received the telemarketing/advertising text messages on her cellular telephone assigned a number ending in 8345.

25. Defendants and/or third parties on Defendants' behalf, sent all the telemarketing text messages described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Plaintiff's prior express written consent.

26. Plaintiff never provided Defendants consent to text her for advertising purposes. In fact, as shown immediately below, one of the first messages Defendants sent to Plaintiff was a generic text message that asked Plaintiff to consent to receive text messages. Defendants made this request because they knew they did not have Plaintiff's consent:



27. This message was clearly an advertisement or telemarketing text message because it is advertising Defendants' text messaging alerts service, which was used by Defendants to

7

encourage users to purchase goods from Defendants.

28. This message was clearly sent by impersonal, automated means, as is Defendants' marketing practice. While not entirely clear from the context, to the right of the characters "T&C" is a link to Defendants' "Privacy Policy", which, among other things, informed users that they could choose to "opt-in" to receive automated text messages in exactly "one of two ways"—by filling out and submitting a linked-to online form or by sending a text message to Defendants. While users could "opt-in" to the alert program through an online form, the online opt-in form linked to from the privacy policy was not the same form Plaintiff used to create her online account. Plaintiff neither saw nor submitted the online opt-in form, nor did she send a text message to Defendants.

29. However, Defendants' linked-to privacy policy specifically stated multiple times that Defendants' marketing campaigns use autodialed messages. The privacy policy stated that after the user submitted the opt-in online form "an autodialed message will be sent to your phone number. . ."; it told the user that if he or she signed up for the text alerts he or she would agree "to receive up to 3 auto-dialed marketing text messages per week delivered to the phone number provided at opt-in"; and it stated that "[a]utomated messages will be delivered to the phone number you provide at opt-in."

30. Plaintiff felt Defendants' telemarketing/advertising was an invasion of her privacy.

31. It was obvious to Plaintiff that Defendants were engaged in a marketing campaign wherein Defendants contacted a large number of consumers using an autodialer.

32. Based on the circumstances of the text, Plaintiff believed Defendants texted her cellular telephone using an ATDS that automatically selected her number from a computer database.

33. Plaintiff understood the purpose of Defendants' text messages was to solicit business from Plaintiff.

34. The telephone number Defendants texted was assigned to a cellular telephone service for which charges incur for incoming communications pursuant to 47 U.S.C. § 227(b)(1).

35. Plaintiff is the exclusive user of the cellular telephone assigned the number ending in 8345.

36. Defendants' text messages constituted communications that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

37. Plaintiff did not provide Defendants with prior express written consent to receive texts to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

38. All texts messages Defendants sent to Plaintiff violate 47 U.S.C. § 227(b)(1).

39. Plaintiff has reason to believe Defendants have texted, and continue to text, thousands of wireless telephone customers to market their products and services using an automated dialler without receiving the customers' prior express written consent.

40. Plaintiff's overriding interest is ensuring Defendants cease all illegal telemarketing practices and compensate all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

41. In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text messages to cell phones.

42. On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendants to cease all wireless telemarketing and spam activities and an award of statutory damages to the

class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

**A.  CLASS ALLEGATIONS**

43. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and the following class defined as follows (the "Class"):

> All individuals in the United States who received one or more telemarketing and/or advertising text messages made by or on behalf of Defendants to the individual's cellular telephone through the use of an automatic telephone dialing system, or any other device having the capacity to dial numbers without human intervention, from August 1, 2015 to the date the Class is certified, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

44. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and their current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendants' counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

45. This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

46. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

47. Plaintiff and members of the Class were harmed by Defendants' acts in at least the

following ways: Defendants, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiff and the Class members.

**B.   NUMEROSITY**

48.   The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

49.   On information and belief, Defendants sent telemarketing text messages to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendants' records.

**C.   COMMONALITY AND PREDOMINANCE**

50.   There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

51.   Common questions for the Class include, but are not necessarily limited to the following:

    a.   Whether Defendants' conduct violated the TCPA;

    b.   Whether Defendants systematically sent telemarketing and/or advertising text messages using an ATDS to consumers who did not previously provide Defendants and/or its agents with prior express written consent to receive such text messages after August 1, 2015;

    c.   Whether members of the Class are entitled to treble damages based on the willfulness of Defendant' conduct;

    d.   Whether Defendants systematically sent text messages to consumers after August 1, 2015 (other than messages made for emergency purposes or made

with the prior express written consent of the recipient) using any automatic dialing system to any telephone number assigned to a cellular phone service; and

e. Whether Defendants and its agents should be enjoined from engaging in such conduct in the future.

### D. TYPICALITY

52. Plaintiff's claims are typical of the claims of the other members of the Class.

53. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

### E. ADEQUATE REPRESENTATION

54. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

55. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defences unique to Plaintiff.

### F. POLICIES GENERALLY APPLICABLE TO THE CLASS

56. This class action is appropriate for certification because Defendants has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

57. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

### G. SUPERIORITY

58. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy

given that joinder of all parties is impracticable.

59. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

60. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.

61. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

62. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TCPA, 47 U.S.C. § 227**
**("Robocall Claim" On behalf of Plaintiff and the Class)**

63. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

64. Defendants sent unsolicited and unauthorized telemarketing text messages using an ATDS to Plaintiff's and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Plaintiff Class Members.

65. Defendants sent the telemarketing text messages without prior express written consent of the Plaintiff and Plaintiff Class Members.

66. The foregoing acts and omissions of Defendants constitute numerous and multiple

Case 1:19-cv-07487-PKC Document 1 Filed 08/09/19 Page 14 of 16

violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

67. As a result of Defendants' violations of 47 U.S.C. § 227, *et. seq.*, Plaintiff and the Plaintiff Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. Because Defendants had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members.

69. Plaintiff and the Plaintiff Class Members are also entitled to and do seek injunctive relief prohibiting such conduct in the future.

## ATTORNEY'S FEES

70. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

71. Plaintiff is entitled to recover reasonable attorney fees and requests the attorneys' fees be awarded.

## JURY DEMAND

72. Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a. An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing her counsel SIRI & GLIMSTAD LLP as lead Class Counsel;

b. An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c. An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d. An injunction requiring Defendants and their agents to cease all unsolicited telephone telemarketing activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

e. Pre-judgment and post-judgment interest on monetary relief;

f. An award of reasonable attorneys' fees and court costs; and

g. All other and further relief as the Court deems necessary, just, and proper.

Dated:  August 9, 2019

                Respectfully Submitted,

                */s/ Aaron Siri*
                Aaron Siri
                Mason Barney
                Brian Rabkin
                SIRI & GLIMSTAD LLP
                200 Park Avenue
                17th Floor
                New York, NY 10166
                Phone: (212) 532-1091
                Fax: (646) 417-5967

                **ATTORNEYS FOR PLAINTIFF**
                **AND THE PROPOSED CLASS**